# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 29, 2012 Session

## CHARLES ROBERT BRAUN, JR. v. NITA LYNN BRAUN

**Appeal from the General Sessions Court for Roane County**
**No. 9774A     Hon. Dennis W. Humphrey, Judge**

---

**No. E2012-00823-COA-R3-CV-FILED-OCTOBER 2, 2012**

---

This is a post-divorce appeal.  Stepfather assumed a parental role over Mother's child from a previous relationship even though only one child was born of the relationship between the Parties.  Following an agreed divorce, the court ordered Stepfather to submit child support for both children.  The court reasoned that as a result of Stepfather's participation in a petition to terminate the biological father's parental rights to Mother's child, the Child lost any right to support from his biological father.  Stepfather appeals.  We reverse the decision of the trial court but remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the General Sessions Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J. joined and CHARLES D. SUSANO, JR., concurred filing a separate concurring opinion.

Robert W. Wilkinson, Oak Ridge, Tennessee, for the appellant, Charles Robert Braun, Jr.

Lisa A. White, Knoxville, Tennessee, for the appellee, Nita Lynn Braun.

## OPINION

## I.  BACKGROUND

The facts of this case are not in dispute.  The Child at issue was born to Nita Lynn Braun ("Mother") and Paul I. McFayden ("Father") on August 1, 2000.  At some point, Mother and Father separated, and Father did not maintain a relationship with the Child.

Mother became romantically involved with Charles Robert Braun, Jr. ("Stepfather"), who, with Mother's permission, allowed the Child to believe that he was the Child's father. Thereafter, a child ("Titus") was born to Mother and Stepfather. Titus was Stepfather's first biological child. Approximately one and a half years later, Mother and Stepfather ("the Parties") married. In February 2008, the Parties filed a joint petition to terminate Father's parental rights to the Child. They alleged that Stepfather sought to adopt the Child and asked that the Child's last name be changed as evidence of that intent. Upon his receipt of the petition, Father did not object to the termination of his parental rights and an order was entered terminating Father's parental rights and awarding custody of the Child to the Parties. However, Stepfather never proceeded with his requested adoption of the Child. Instead, the Parties separated in September 2009.

One month later, Stepfather filed a complaint for divorce. Mother stipulated that a ground existed for divorce and following mediation, agreed to a division of the marital property and debt. The Parties disagreed as to child support and custody issues relating to the Child and Titus. Stepfather sought primary residential custody of Titus but refused any involvement with or responsibility for the Child that he once sought to adopt. Stepfather even refused to visit the Child and informed the Child that he was not the Child's father during his last scheduled visit with the Child. Mother sought primary residential custody of both children and alleged that Stepfather should be required to submit child support for both children even though Stepfather had not proceeded with his intended adoption of the Child. Stepfather asserted that he should not be required to submit child support for the maintenance and support of the Child because he was neither the biological nor adoptive father of the Child.

A hearing was held at which issues relating to the custody and support of the children were discussed. Relative to this appeal, the court found that Stepfather was "in a position in loco parentis with the [C]hild and should be required to pay child support." The court reasoned,

> Because [Stepfather assisted] in causing [Father's] parental rights to be terminated and held himself out as the father, he is more than a step-father. He has assumed the position as a father, having caused that vacancy. The law does not favor causing a bastardy situation. And, the law is clear that the best interest[] of a child is paramount in divorce and parenting litigation. To rule otherwise would be a disservice to the [C]hild.

The court continued that while Stepfather would be required to submit child support, he would not be permitted to exercise any parenting time with the Child because of the heartless manner in which he informed the Child that he was not the Child's father. The court

questioned Stepfather's motive for his decision to reveal the truth to the Child and concluded that Stepfather was simply attempting to avoid the hardship of paying additional child support on the Child's behalf. The court also directed Stepfather to fund the Child's participation in a counseling program and in an effort to facilitate future visitation with the Child, ruled that Stepfather would be required to attend the counseling sessions when deemed appropriate by the counselor. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issue raised on appeal by Stepfather as follows:

A. Whether the trial court erred in requiring Stepfather to submit child support for the maintenance and support of the Child, Mother's child from a previous relationship.

Mother also raised an issue for our consideration that we restate as follows:

B. Whether Mother is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

This case presents a novel issue. Stepfather does not take issue with the amount of the child support obligation imposed upon him. Instead, he asserts that he should not be required to submit child support for the Child when he is not the biological or adoptive father of the Child. He alleges that in Tennessee, only biological or adoptive parents may be required to submit child support. Mother responds that the trial court did not err in ordering

Stepfather to submit child support. Mother alternatively responds that if this court were to reverse the court's support order, then Stepfather should be required to submit spousal support to offset the Child's loss of support. Mother notes that Father's parental rights could not have been terminated without Stepfather's participation in the petition.

"Tennessee does not provide for the imposition of a child support obligation upon an individual unless that person has a duty to support his or her natural or adopted child." *Harmon v. Harmon*, No. 02A01-9709-CH-00212, 1998 WL 835563, at *5 (Tenn. Ct. App. Dec. 3, 1998). In a divorce proceeding, the trial court may impose an obligation of child support upon "the natural parents *or* those who stand in the place of the natural parents by adoption." Tenn. Code Ann. § 36-6-101(a)(1) (emphasis added). "In the absence of a formal adoption, a man is not obligated to provide support for a child when it is shown by clear, strong, and convincing evidence that he is not the natural parent of the child." *Harmon*, 1998 WL 835563, at *5.

In this case, there is no question that Stepfather is neither the biological nor the adoptive father of the Child. There is also no question that the termination of Father's parental rights severed Father's rights, responsibilities, and obligations to the Child. Indeed, Tennessee Code Annotated section 36-1-113(l) provides,

> (1) An order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian. The parent or guardian shall have no further right to notice of proceedings for the adoption of that child by other persons and shall have no right to object to the child's adoption or thereafter to have any relationship, legal or otherwise, with the child. It shall terminate the responsibilities of that parent or guardian under this section for future child support or other future financial responsibilities *even if the child is not ultimately adopted*; provided, that the entry of an order terminating the parental rights shall not eliminate the responsibility of such parent or guardian for past child support arrearages or other financial obligations incurred for the care of such child prior to the entry of the order terminating parental rights.

> (2) Notwithstanding the provisions of subdivision (l)(1), a child who is the subject of the order for termination shall be entitled to inherit from a parent whose rights are terminated until the final order of adoption is entered.

(Emphasis added). Mother alleges that because Stepfather intended to adopt the Child and sought termination of Father's parental rights to the Child, he cannot deny responsibility for

the Child, who, as a result of Stepfather's actions, is no longer entitled to continued support from his natural father. Without Stepfather's assistance, Mother could not have sought termination of Father's parental rights. *See* Tenn. Code Ann. §§ 36-1-113(b), -117(f). We agree with Mother that as a result of Stepfather's refusal to proceed with the adoption, the Child was left without a natural or adoptive father.

We are sympathetic to the Child's plight, and we acknowledge that the best interest of the child is always paramount in a divorce proceeding. *See generally* Tenn. Code Ann. § 36-6-401(a). However, the legislature has made it clear that this court may only impose a child support obligation on a child's natural or adoptive parent. Tenn. Code Ann. § 36-6-101(a)(1). Additionally, the legislature has provided a very specific framework regarding the adoption of children and the subsequent establishment of the parental relationship. *See* Tenn. Code Ann. § 36-1-121(a) (providing that the final order of adoption establishes the parental relationship between the adoptive parent and the adopted child). Here, the adoption process, while started, was never completed. *See Bank of Maryville v. Topping*, 393 S.W.2d 280, 282 (Tenn. 1965) ("Adoption is a creature of statute and not of the common law, and to create the contemplated relation the defined statutory procedures must be substantially followed."). Accordingly, we conclude that the trial court erred in imposing a statutory obligation upon Stepfather to submit child support for the care and maintenance of the Child when he was neither the biological nor adoptive parent of the Child. In so concluding, we must express our regret in reaching this decision. We cannot imagine a more sympathetic exception to the statutory rule regarding the imposition of child support. While we disapprove of the heartless manner in which Stepfather informed the Child that he was not the Child's father and of his refusal to support a child that he once sought to adopt, this court cannot condone the imposition of a legal obligation to submit child support when such an obligation does not exist.

Having concluded that Stepfather is not legally obligated to submit child support for the maintenance and support of the Child, we must address Mother's assertion that this court should replace the child support obligation that cannot be statutorily imposed with a spousal support obligation. The record reflects that Mother filed a motion for alimony pendente lite following Stepfather's request for divorce but that Mother never requested any other type of spousal support. Thus, Mother asks this court to impose a support obligation that was not considered by the trial court. Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). Additionally, a party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting

-5-

parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted). If Mother had requested spousal support at trial, the court could have addressed the highly fact-intensive issue and provided a record for this court's review. Accordingly, we must conclude that this issue is waived.

While we refuse to replace the child support obligation that cannot be statutorily imposed with a spousal support obligation, an upward deviation of Stepfather's child support obligation relating to Titus might be warranted in light of the Parties' changed circumstances as a result of this opinion. We remand this case to the trial court with direction to complete a new child support worksheet and consider whether an upward deviation from the child support guidelines is appropriate in setting Stepfather's remaining child support obligation.

B.

Mother requests attorney fees on appeal. Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Having concluded that the trial court erred in ordering Stepfather to submit child support for the maintenance and support of the Child, we respectfully deny Mother's request to award attorney fees on appeal in this case. Indeed, this appeal is not wholly without merit and lacking in justiciable issues.

## V. CONCLUSION

The judgment of the trial court directing Stepfather to submit child support for the maintenance and support of the Child is reversed. The case is remanded for the trial court to reconsider Stepfather's child support obligation relating to his biological child. Costs of the appeal are taxed to the appellee, Nita Lynn Braun.

_____
JOHN W. McCLARTY, JUDGE

-6-